**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARBARA EVANS and RAYMOND J. BERRY, on behalf of themselves and all others similarly situated, :<br><br>Plaintiffs, :<br><br>v. :<br><br>LOWE'S HOME CENTERS, INC., :<br><br>Defendant. : | CIVIL ACTION NO. 3:CV-03-0438<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Before me is Plaintiffs' Motion for Class Certification (Doc. 179), Defendant's Brief In Opposition (Doc. 210) and Plaintiffs' Reply Brief (Doc. 218). For the following reasons, Plaintiffs' motion will be denied in part and granted in part.

## PROCEDURAL HISTORY

Plaintiffs filed a complaint styled Class Action Complaint (Doc. 1) in which they allege that Defendant failed to pay appropriate overtime wages to Department Managers ("DMs") and Assistant Department Managers ("ADMs"). Count I of the Complaint seeks relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Plaintiffs pursue the FLSA claim on behalf of those titled employees who work or worked in Defendant Lowe's Home Centers, Inc.'s ("Lowe's") thirty-six stores located in the Commonwealth of Pennsylvania, and they seek to do so as a collective action under the FLSA's class opt-in provision. 29 U.S.C. § 216(b). Count II of the Complaint seeks relief under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101-115. Plaintiffs pursue Count II as to the same employees, as a traditional class action under Federal Rule

of Civil Procedure 23, and assert that supplemental jurisdiction exists under 28 U.S.C. § 1367.

I denied Defendant's Motion for Summary Judgment in a Memorandum Opinion and Order dated April 29, 2004.  (Doc. 81.)  I conditionally certified the class of DMs and ADMs of Defendant's stores in the Commonwealth of Pennsylvania under the FLSA, 29 U.S.C. § 216(b) on June 17, 2004.  (Doc.90.)  I deferred ruling on the Rule 23 aspect of Plaintiffs' motion.  I now address class certification of PMWA and FLSA opt-in members who seek to join Plaintiffs' proposed Class.

## DISCUSSION

Plaintiffs Barbara Evans, Raymond J. Berry, Scott McClellan, Andy Butler, Brian Diehl, Mark Kirby, Jacqueline Anselmi, Greg Steffee and Mike Miller, are nine current and former DMs or ADMs employed in Defendant Lowe's Pennsylvania stores.  (Doc. 180-1 at 7.)  Plaintiffs seek to represent the following class:

> All individuals who, since March 11, 2000, have been employed in Defendant's Pennsylvania stores as DMs or ADMs and were compensated for overtime work based on Defendant's Salaried Plus Overtime Eligible Compensation Plan ("Plan").  ("Class")

(*Id.*)  Plaintiffs report that as of July 2004, the purported Class consisted of 1,816 members of which 499 individuals joined Plaintiffs' FLSA claims by filing consent forms.  (*Id.* at 7-8.)  Plaintiffs suggest that the proposed Class can be divided into three distinct subclasses: (1) Signer Subclass (2) Late-Signer Subclass and (3) Non-Signer Subclass.  ("Subclasses) (*Id.* at 8)

Plaintiffs argue that this case requires a showing of common proof to common legal requirements under both the FLSA and PMWA.  Their overarching argument is that

2

this is a matter of proving the company's policy and practice in its calculation and administration of overtime compensation for its employees. (*Id.* at 10.) Plaintiffs argue that as a large company with over forty stores throughout Pennsylvania, Lowe's has a standard practice that will be questioned repeatedly by each of the plaintiffs if they were to prove their cases individually. (*Id.*)

**1.    Class Certification of Plaintiffs' Fair Labor Standards Act Claim Under 29 U.S.C. § 216(b)**

Plaintiffs argue that the opt-in FLSA plaintiffs should proceed as a Class because there are enough overriding common facts and law that makes them similarly situated. Plaintiffs argue that Defendant's common pattern, plan or practice is the determinative factor in this case (Doc. 180-1 at 33) (citing *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43,52 (3d Cir. 1989)) and therefore, this type of analysis overrides differences such as plaintiffs' duties, job locations and billing rates (Doc.180-1 at 34) (citing *Mos v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa. 2000)). Essentially, Plaintiffs argue that "all Class members share a common universe of core facts, and the resolution of their claims will entail an inquiry into Defendant's uniform course of conduct, which is subject to common proof in a single trial." (Doc.180-1 at 34.)

The FLSA provides in pertinent part:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a *clear mutual understanding of the parties* that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed

3

> weekly work period, such salary arrangement is permitted by the Act .

29 C.F.R. § 778.114 (emphasis added).  Plaintiffs claim that Defendant Lowe's has failed to comply with the requirements set forth in this section of the FLSA.  (Doc.180-1 at 9-10) Plaintiffs asked me to certify the Class under Section 216(b) of the FLSA.  Class certification requirements under FLSA are different than those under other federal laws. Mainly, under the FLSA, prospective plaintiffs must consent to join the class and it is usually known as a collective action.  "Because the Portal-to-Portal Act amendment changed participation in an FLSA class from 'opt-out' and 'opt-in', FLSA plaintiffs could not certify a class under *Fed. R. Civ. P.* 23, even though federal subject matter jurisdiction [was] obtained." *Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 306 (3d Cir. 2003).

      I conditionally certified the class of DMs and ADMs of Defendant's stores in the Commonwealth of Pennsylvania under the FLSA, 29 U.S.C. § 216(b) on June 17, 2004.  (Doc.90.)  That section of the FLSA provides in pertinent part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Thus, there are two requirements of the FLSA's opt-in provision: (1) all plaintiffs must be similarly situated; and (2) all opt-in plaintiffs must consent in writing to be a named plaintiff.  As of July 2004, Plaintiffs report that 499 individuals joined Plaintiffs' FLSA claims by filing consent forms.  (Doc. 180-1 at 7-8.)

4

As stated in my previous opinion where I granted conditional certification :

> Whether unnamed plaintiffs are similarly situated has become a two step or tiered process. *Cameron-Grant v. Maxim Healthcare Svcs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001)); *Smith v. Sovereign Bancorp, Inc.*, No. Civ.A. 03-2420, 2003 WL 22701017, at *1 (E.D. Pa. Nov. 13, 2003). The first step generally occurs early in the case and involves an inquiry into whether the would-be plaintiffs are similarly situated. *See Cameron-Grant*, 347 F.3d at 1243 n.2. This typically results in a conditional certification of the class as it is based on minimal information, usually the allegations of the complaint. *Id.* The second step usually occurs after class related discovery and involves a specific factual analysis of each would-be plaintiff's claim. *Id*. This step is usually conducted in the context of a defendant's motion to decertify the conditionally certified class of opt-ins.

(Doc. 90 at 3.) The second step determination is usually taken after discovery and as the court has more information on which to base its decision, a stricter standard applies. *Morisky v. Pub. Svc. Elec. and Gas Co.,* 111 F. Supp. 2d 493, 497 (D. N.J. 2000).

I have already decided that class certification based on the inapplicability of the fluctuating work week method to Plaintiffs will not be granted. Plaintiffs argued that since they worked in excess of forty hours a week, the fluctuating work week method did not apply. (Doc.90 at 7.) In their Motion for Class Certification, Plaintiffs reargues this point, stating that to resolve the FLSA claim "the Court must determine whether the Plan facially complies with other requirements of the FWM." (Doc.180-1 at 35.) In my opinion, I have already stated that:

> Neither the language of 29 C.F.R. 778.114(a) supports [the Plaintiffs'] point of view, nor does the existing authority. *See Condo v. Sysco Corp.*, 1 F.3d 599, 603 (7th Cir. 1993) (noting that each requirement of 778.114 was satisfied because plaintiff worked fluctuating hours,

5

> although he never worked fewer than forty hours per week); *Flood v. New Hanover County*, 125 F.3d 249, 253 (4th Cir. 1997) (finding that employees hours fluctuated for purposes of section 778.114 even though they worked pursuant to a fixed schedule, the number of hours varied from week to week)); *Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998) (finding that work hours must fluctuate and does not require an unpredictable schedule)).

(*Id.* at 8-9.)  The fluctuating workweek salary is for a fluctuating workweek, whether great or few.  29 C.F.R. § 778.114(a).  However, in paragraph 59(ii) of the Complaint, Plaintiffs allege that Lowe's actually paid some DMs and ADMs less than their weekly salary for weeks in which they worked less than forty hours. This alleges a violation of the fluctuating work week authorized by the FSLA because the subject DMs and ADMs were not paid the fixed salary for forty hours.

"To protect workers, the fluctuating workweek method may be used if there is a clear mutual understanding."  *Heder v. City of Two Rivers,* 149 F. Supp. 2d 677, 685 (E.D. Wis. 2001).  Hence, the ultimate issue to be decided in determining if the opt-in plaintiffs are similarly situated or not is whether there was a "clear mutual understanding of the parties" as to the Plan.  What constitutes a "clear mutual understanding" is not statutorily defined but courts have held that communication of the essential feature of the fluctuating workweek plan is sufficient.  *Griffin,* 142 F.3d at 716 (stating that the basic element of 29 C.F.R. § 778.114 that needs to be communicated to the employees is "that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period.")

Plaintiffs argue that the FLSA's "clear mutual understanding" inquiry will require determination of "whether a signed Plan Document is dispositive; whether the requirement demands a written agreement, requires consent, or invokes objective contract law principles; whether the requirement must be satisfied *before* the commencement of work and who bears the burden of proof." (*Id.* at 35.)  While I do not agree with the Plaintiffs that the "clear mutual understanding" inquiry will require these determinations, I do believe that Plaintiffs' collective action does not require a fact specific, individualized inquiry as the Defendant argues.

The FLSA requires that there is a clear mutual understanding, not an agreement or a contract, between the parties.  *Griffin,* 142 F.3d at 716 (stating that courts do not require "that employees consent to the fluctuating workweek plan to satisfy 778.114 [but only that the] employees . . . understand it.").  Hence, unlike PMWA's "agreement or understanding" requirement, FLSA's "understanding" requirement does not require that the employees consented to the Plan.  Proof under the FLSA will rely on objective rather than subjective evidence and thus, class certification is appropriate as to the FLSA plaintiffs.

Proof of clear understanding does not require a showing beyond the words in the statute, hence, "Section 778.114 does not require that the employee know the hours expected to be worked, that the fixed salary is not be paid for weeks where the employee performs no work, or any other details of how the [fluctuating workweek] is administered." *Sansom v. Apollo Res., Inc.,* 242 F.3d 629, 637 (5th Cir. 2001); *see also Valerio v. Putnam Assoc. Inc.,* 173 F.3d 35, 40 (1st Cir. 1999) (stating that "the regulation calls for no such enlarged understanding" such as how overtime premiums are calculated).

Courts have held that where a company's policies, practices and procedures provide

7

a seemingly reasonable explanation of the flexible workweek plan to its employee, a clear understanding requirement of the FLSA is met. For example, in *Griffin*, the Court of Appeals for the Fourth Circuit held that introduction of the plan at mandatory employee meetings, where explanatory memorandums were distributed and signatures were secured, proved to be probative of employees' clear understanding of the plan. 142 F.3d at 716. Other examples of evidence offered to prove clear understanding are an employers' testimony of oral notification to employees of their fluctuating workweek plan as well as personnel forms, employee handbooks and memorandums containing information about their fluctuating workweek plan. *Roy v. County of Lexington,* 141 F.3d 533, 548 (4th Cir. 1998). The court further held that paychecks provided a regular lesson to the employees on how the fluctuating workweek plan worked. *Id.* at 717; *see also Valerio,* 173 F.3d at 39 (stating that the parties' post-hiring conduct, namely plaintiff's continued employment without complaint about her pay, is a probative factor in proving the clear understanding requirement).

Without going into the analysis of whether the parties have demonstrated whether a clear understanding of the Plan has been achieved, the FLSA class will be certified since the standard of proof and the required evidence under FLSA is not an individualized inquiry but one based on policy, practice and conduct. Defendant contends that the method in which a clear and mutual understanding is reached is left to the discretion of management at the store level. (Doc. 210 at 35) (citing Howard Dep. 75, 136, 145, 152-53) And therefore, Defendant argues that since the method of reaching a clear and mutual understanding is neither uniform nor uniformly applied from store to store, an individual inquiry is required. *Johnston v. Fontaine,* 265 F.3d 178, 188 (3d Cir. 2001) (citing *In re*

*LifeUSA Holding Co., Inc.,* 242 F.3d 136, 146 (3d Cir. 2001)) (explaining that class certification was denied where annuity selling "agents did not utilize the marketing materials uniformly"). Indeed, according to one of Defendant's employees, Aleda Howard, obtaining a signed agreement is only one method and that the "corporate expectation is simply that the individual stores will achieve 'clear and mutual understanding' in the method best suited to the interests of that particular store." (*Id.*) (citing Howard Dep. 107, 136, 152-53). Finding out the method utilized by Defendant's thirty-six Pennsylvania stores, however, does not provide such an undue hardship as to bar certification of Plaintiff's FLSA's claim. I agree that the objective of FLSA's section 216(b) of lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact will be met by certifying the FLSA plaintiffs. (Doc. 180-1 at 36) (citing *Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa 2000)).

For the foregoing reasons, Plaintiffs' FLSA collective action will be certified.

**2.    Class Certification of Plaintiffs' Pennsylvania Minimum Wage Act Claim Under Federal Rules of Civil Procedure 23**

Plaintiffs ask me to certify the Class under Rule 23 of the Federal Rules of Civil Procedure as Defendant's acts violated both state law and the federal law. In this case, Plaintiffs report that as of July 2004, the purported Class consisted of 1,816 members of which 499 individuals joined Plaintiffs' FLSA claims by filing consent forms. (Doc. 180-1 at 7-8.) The remaining 1,317 members opted out of the FLSA claim. I find that the Court lacks supplemental jurisdiction over the PMWA claim and therefore, Plaintiffs' state law claim will be dismissed without prejudice. Furthermore, even if it is appropriate for the Court to exercise supplemental jurisdiction, I find that Plaintiffs have failed to meet the

9

predominance requirement under Fed. R. Civ. P. 23(b).

### a.  *Supplemental Jurisdiction Under 28 U.S.C. § 1367*

Plaintiffs state in their Complaint that this Court has supplemental jurisdiction over Plaintiffs' PMWA claim pursuant to 28 U.S.C. § 1367 (Doc. 1, ¶ 2) with the Court's original jurisdiction arising from Plaintiffs' FLSA claim (*Id.* ¶ 1). The PMWA provides in pertinent part:

> No employer may be deemed to have violated these §§ 231.41-231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, *under an agreement or understanding arrived at between the employer and the employee before performance of the work*, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41.

43 P. S. § 231.43(d) (emphasis added). Plaintiffs claim that Defendant Lowe's has failed to comply with the requirements set forth in this section of the PMWA. (Doc.180-1 at 9.) In determining whether I have supplemental jurisdiction over the Plaintiffs' state law claim, I find the Third Circuit Court of Appeals decision in *Asencio* to be instructive.

*Asencio* involved a labor dispute over unpaid wages. 342 F.3d at 303. Similar to the Plaintiffs in this case, plaintiffs in *Ascencio* gained certification of the FLSA opt-in class and then sought certification of FLSA opt-out class under Fed. R. Civ. P. 23(b)(3) and the PMWA. *Id.* The numbers of the two prospective classes in *Ascencio* were 447 for FLSA and 4,100 for PMWA. *Id.* at 310. Under 28 U.S.C. § 1367, "a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim." *Id.* at 308. But in *Ascencio*, the Third Circuit Court

of Appeals reversed the district court's certification of the opt-out class and stated that the district lacked supplemental jurisdiction for the following reasons: (1) "Congress's express preference for opt-in actions for the federal cause of action" *Id.* at 310.; (2) "sheer difference in numbers between the two prospective class" *Id.* at 310.; and (3) predominance of the PMWA claim. *Id.* at 311.

For the first reason, while Congress has not expressly addressed supplemental jurisdiction in the FLSA, the Third Circuit Court of Appeals stated that "Congress chose to limit the scope of representative actions for overtime pay and minimum wage violations" and have expressed "preference for opt-in actions for the federal cause of action." *Id.* at 310.; *see also McClain v. Leona's Pizzeria, Inc.,* No. 04-C-1913, 2004 U.S. Dist. LEXIS 14779, at *7 (N.D. Ill. July 28, 2004) ("We find that allowing [plaintiff] to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress's intent to limit these types of claims to collective actions."). Taking the first reason into account, the second reason is compelling since the difference in the number of members in the opt-in (499) versus the opt-out (1,317) plaintiffs is significant. While the disparity in number is not dispositive of whether there will be predominance of the PMWA claim, when the disparity is great, it could be a guiding factor. *Id.* at 311. This type of disparity in numbers between the FLSA opt-in plaintiffs and state law *Fed. R. Civ. P.* 23 plaintiffs would "flaunt the Congressional intention that FLSA claims proceed as an opt-in scheme." *Jackson v. City of San Antonio,* No.SA-03-CA-49-RF, 2003 U.S. Dist. LEXIS 22574, at *20 (W.D. TX Dec. 3, 2003) (finding that this fact alone favors remand of the state claims); *see also Lindsay v. Gov't Employees Ins. Co.,* 355 F. Supp. 2d 119, 121 (D.D.C. 2004) (opining that while it is possible that the "federal employees could equal or exceed the size of the

putative state class, the Court nevertheless finds it would be inappropriate to exercise jurisdiction over plaintiffs who have not affirmatively opted into the federal action.").

Lastly, the PMWA aspect of the claim presents two state law issues not pertinent to the FLSA claim. Issues of whether there was an agreement between the parties and whether the agreement or understanding was reached before commencement of work, need not be proven under the FLSA claim. *Ascencio* involved an implied contract of employment, requiring proof of an intent to form a contract. *Id.* at 311. It was decided that since "the FLSA claim does not require an intent to form a contract, individual questions of implied contract formation with respect to each member of the WPCL class might conceivably predominate over the issues common to the claims of the FLSA plaintiffs." *Id.* "Where 'the state issues substantially predominate, whether in terms of proof, or the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'" *Id.* at 309 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)).

Plaintiffs argue that *Ascencio* does not apply since the case was decided before the enactment of the Class Action Fairness Act of 2005 ("CAFA") on February 18, 2005. 28 U.S.C. § 1332 (2006) (amending U.S.C. § 1332 (2005)). Plaintiffs argue that I would have diversity of citizenship jurisdiction over this action under CAFA, and, hence, dismissal for lack of supplemental jurisdiction is inappropriate. (Doc. 218-1 at 16.) "CAFA amended the diversity statute to vest original jurisdiction in the federal courts over class actions in which there is minimal diversity and the amount in controversy exceeds $5,000,000." *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 341 n.7 (2d Cir. 2006). According to the Complaint, the named Plaintiffs are from Pennsylvania while the Defendant is incorporated

and headquartered in North Carolina. (Doc.1, ¶¶ 4-7.) Hence, Plaintiffs have met the requirements under section 1332(d)(2)(A). Plaintiffs have failed to plead that the amount in controversy will exceed $5,000,000 under section 1332(d)(2). More importantly, according to Section 9 of CAFA, this act "applies only to class actions commenced on or after February 18, 2005." *Plubell v. Merck & Co.,* 434 F.3d 1070,1071 (8th Cir. 2006) (citing 28 U.S.C. § 1332(d) note; Class Action Fairness Act of 2005, § 9, 119 Stat. at 14). This action was filed on March 11, 2003.

For the foregoing reasons, I find that I do not have supplemental jurisdiction over this matter and Plaintiffs' state law claim will be dismissed without prejudice.

### b. *Predominance Requirement Under Federal Rules of Civil Procedure 23(b)(3)*

Even if I found it appropriate to exercise supplemental jurisdiction, the Class cannot be certified as it cannot meet the requirements of Fed. R. Civ. P. 23(b). "In order to obtain class certification, plaintiffs must establish that all four requisites of *Rule 23(a)* and at least one part of *Rule 23(b)* are met." *In re Chiang,* 385 F.3d 256, 265 (3d Cir. 2004).

Rule 23(a) of the Federal Rules of Procedure provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Once these four requirements are met, Plaintiffs need to meet the requirements under Fed. R. Civ. P. 23(b), which states in pertinent part that a class action

is maintainable when:

> [T]he court finds that the questions of law or fact common to the members of the class predominates over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). "In seeking certification of a class, the plaintiff bears the burden of establishing that the action satisfies [Fed. R. Civ. P. 23] requirements." *Scholtisek v. Eldre Corp.,* No.03-6656, 2005 U.S. Dist. LEXIS 14957, at *5 (W.D.N.Y. Feb. 3, 2005). I find that Plaintiffs ultimately fail in establishing that the questions of law and fact common to all of the proposed Class members predominates over the individual question of whether the parties, "under an agreement or understanding arrived at between the employer and the employee before performance of the work" that the Plan was to apply. 43 P.S. § 231.43(d).

"If proof of the essential elements of the cause of action requires individual treatment, the class certification is unsuitable." *In re Linerboard Antitrust Litig.,* 305 F. 3d 145, 156 (3d Cir. 2002). Plaintiffs argue that common questions predominate. Their primary argument is that the proposed Class members share a common set of predominate facts: same job titles; same overtime laws; same job descriptions; same general 48 hour work week; same overtime calculation; same maintenance of time and payroll records; and same damage calculations. (Doc.180-1 at 27.) Additionally, Plaintiffs argue that Defendant's standard policy, practice or procedure will predominate over every case. (*Id.*) It is true that the "mere fact that . . . [an issue] may affect different class members differently does not compel a finding that individual issues predominate over common ones." *In re Linerboard Antitrust Litig.,* 305 F. 3d at 162. But where the essential element of the cause of action requires proof of an individualized nature, as required here, certification is inappropriate.

Ultimately, Plaintiffs state that "[a]t the heart of *every* Class member's claim is the interplay between Defendant's . . . Plan . . . and §231.43(d)'s requirement that the employee and employers had to agree to and understand the compensation method before commencing work." (Doc.180-1 at 28) (emphasis in original) (citation omitted). Plaintiffs argue that the same legal issues will be tried over and over in determining this issue, such as:

> [W]hether a signed Document is dispositive; whether [PMWA] requires consent or a writing; whether a Plan Document signed *after* the Class member started working as a DM/ADM have any relevance to the [PMWA] analysis; whether extrinsic evidence has any relevance to the [PMWA] analysis; and whether [PMWA] agreement/understanding requirement is measure objectively under contract principles.

(*Id.*) (emphasis in original). Altogether, the common legal and factual issues shared by all proposed Class members do not predominate over the individualized proof that is essential to this claim. Whether there was an agreement or understanding about the overtime compensation arrangement between the proposed Class members and Defendant, inevitably goes to the state of mind of both parties. Unlike the "clear mutual understanding" requirement of the FLSA, the PMWA requires that the employees not only understood that they were working under the Plan but demonstrate that they understood how the Plan worked and consented to it. *Friedrich v. U.S. Computer Sys., Inc.,* 1996 U.S. Dist. LEXIS 775, at *30 (E.D. Pa. Jan. 22, 1996) (stating that "agreement or understanding" under the PMWA requires that employees not understand the existence of the plan but also the means of computing it); *see also Griffin,* 142 F.3d at 716 (distinguishing between understanding and agreement and opining that only the latter requires consent). Whether

15

each of the employees understood the mechanics of the Plan and consented to work under it are highly individualized inquiries as to each plaintiff and cannot be resolved by analyzing company policies or dividing the Class into Subclasses.

Inquiry into the state of mind is generally considered to be individualized. In *In re Linerboard Antitrust Litig.*, the Third Circuit Court of Appeals opined that certification is appropriate on a fraud and conspiracy claim even if the inquiries might be individualized. 305 F.3d at 163. But the court reasoned that plaintiffs met the predominance requirement because the inquiry focused on defendants' conduct rather than plaintiffs' conduct or knowledge. *Id.* If the inquiry is based on subjective rather than an objective criterion, class certification is inappropriate. *In re Chiang,* 385 F.3d at 271. In this case, the proof essential to the PMWA claim is subjective and focuses on the conduct and knowledge of both parties.

Furthermore, the Third Circuit Court of Appeals has stated that "it has become well settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action." *Johnston,* 265 F.3d at 190. In *Johnston,* the Third Circuit Court of Appeals affirmed the district court's order denying class certification. Plaintiffs in that case brought a Racketeer Influenced and Corrupt Organization Act claim alleging fraudulent misrepresentation by defendants. The district court denied certification because plaintiffs' claims were based on oral misrepresentations and because "[t]he question, then, was whether affirmative misrepresentations were made to particular investors, an inquiry that necessarily involves an individual review of what each investor was told and what information was provided." *Id.* at 185-86. Similarly, this case involves individual proof of what has been explained to

16

the proposed class members by the Defendant and whether or not these plaintiffs expressed understanding or agreement to the Defendant. Proof of this issue will rely heavily on oral communications.

In conclusion, I find that even if the Court has proper supplemental jurisdiction over Plaintiffs' state law claim, the Class would not be certified as Plaintiffs have failed to prove that the predominance requirement of Fed. R. Civ. P 23(b) has been met.

## CONCLUSION

Plaintiffs' Motion for Class Certification (Doc. 179) will be granted in part and denied in part. Plaintiffs' PMWA state law claim will be dismissed without prejudice. Plaintiffs' FLSA collective action under 29 U.S.C. §216(b) will be certified.

An appropriate Order follows.


| May 18, 2006 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA EVANS and RAYMOND J. BERRY, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LOWE'S HOME CENTERS, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 3:CV-03-0438<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this 18th day of May, 2006, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification motion (Doc. 179) is **DENIED** in part and **GRANTED** in part;

1. Plaintiffs' Pennsylvania Minimum Wage Act state law claim is **DISMISSED** without prejudice; and

2. Plaintiffs' Fair Labor Standards Act collective action is **CERTIFIED**.

                                              /s/ A. Richard Caputo
                                              A. Richard Captuo
                                              United States District Judge